IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:09CR56 |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND |
| ) | |
| ROBERT CAMACHO, III, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion to suppress (Filing No. 15) filed by defendant Robert Camacho, III (Camacho). Camacho is charged in the Indictment with possession of a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count I), and criminal forfeiture for the firearm under 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c) (Count 2). **See** Filing No. 1. Camacho seeks to suppress evidence found after a traffic stop of his vehicle on January 2, 2009, by Omaha Police Department (OPD) Officers.

An evidentiary hearing was held on Camacho's motion on May 11, 2009. Camacho was present for the hearing along with his counsel, Glenn A. Shapiro. The United States was represented by Assistant U.S. Attorney Michael D. Wellman. The court heard the testimony of OPD Officers Lindsay Fox (Officer Fox) and William Seaton (Officer Seaton). The court received into evidence a copy of an OPD standard procedure (Exhibit 1). A transcript of the hearing (TR.) was filed on May 20, 2009 (Filing No. 25). The matter was deemed submitted upon filing of the transcript.

**FINDINGS OF FACT**

Officer Seaton has been employed with the OPD for approximately five and one-half years (TR. 20-21). Officer Seaton is assigned to the uniformed patrol division (TR. 21). Officer Fox has been a uniformed patrol division officer with the OPD for approximately one year (TR. 3). On January 2, 2009, Officer Fox was assigned to the southeast precinct, which is the area of Omaha south of Dodge Street and east of 42nd Street (TR. 4). Officers Seaton and Fox were assigned to A shift, which works 11:00 p.m. to 7:00 a.m.

(TR. 4, 22). On January 2, 2009, Officer Fox was in field training, as a certified officer, with Officer Seaton (TR. 5). The officers were in uniform and driving a marked cruiser (TR. 22).

On January 2, 2009, at approximately 3:10 a.m., Officers Seaton and Fox received a dispatch call related to a 911 call about a domestic disturbance located at 6030 South 34th Street (TR. 6, 22). A neighbor reported that a man with a baseball bat was outside a house threatening a woman who was inside the house (TR. 6, 22). While en route, the officers received information that the individual, a white male, fired shots at the house and left in an orange truck traveling eastbound (TR. 6, 22). Officers Seaton and Fox traveled west on Q Street toward 33rd Street (TR. 5). The officers turned southbound onto 33rd Street (TR. 5). In a typical week, the officers estimate they see only one orange truck (TR. 9, 35). However, approximately eight blocks from the 34th Street house, the officers observed an orange truck traveling northbound on 33rd Street toward the officers' cruiser (TR. 6-7, 17, 23). The officers observed the orange truck within 45 seconds of receiving the dispatch call (TR. 33). The officers had not seen any other vehicles in the area (TR. 24). The officers did not observe the orange truck commit any traffic violations (TR. 18, 25). Approximately one and one-half blocks from Q Street, Officer Fox positioned the cruiser at an angle to block the road from oncoming traffic (TR. 7). The orange truck stopped one house-length from the cruiser (TR. 7-8, 25). There were no street lights in the area where the vehicles were stopped (TR. 8). Initially, the officers could not determine how many people were in the truck (TR. 8).

The officers approached the truck with one officer on either side (TR. 9, 25). Officer Seaton had his gun drawn and ordered the driver to show his hands (TR. 26). From approximately ten feet away, the officers saw the driver reached down below his seat with one hand as if he were hiding something (TR. 11, 26). The driver then elevated his left hand and reached his right hand to the side to retrieve a bottle (TR. 26). Officer Seaton approached the driver, opened the truck's door, and ordered the driver out of the truck (TR. 9, 11, 26). The driver stated, "it's only a beer" (TR. 26). Officer Seaton pulled the driver out of the truck and ordered him to the ground (TR. 26). Officer Fox approached the passenger side of the truck and looked into the window to determine if anyone else was in the vehicle (TR. 10). Officer Fox then went to assist Officer Seaton with the driver,

identified as Camacho, who would not lie flat on the ground and held the beer up so the bottle would not break (TR. 10, 26-27).  Camacho had a bottle of Bud Light beer in his hand (TR. 11-12).  Additionally, the officers could smell alcohol on Camacho (TR. 14).  Initially, Camacho was arrested for driving under the influence of alcohol (TR. 14, 39).  A preliminary breath test revealed Camacho was well over the legal alcohol limit of .08 (TR. 40).  Later, a data check revealed Camacho was driving on a suspended driver's license (TR. 15).  Officer Seaton intended to impound the truck as is his procedure under the circumstances (TR. 40).  An inventory search is conducted on any impounded vehicle pursuant to OPD procedures (TR. 40).

Camacho talked to the officers continuously from the time he exited the truck (TR. 15).  Some of what Camacho was saying was nonsensical, but some of it was informational (TR. 15).  When the officers placed Camacho in the cruiser, Camacho stated he was going to go back to prison (TR. 16, 31).  Camacho's statement was made spontaneously, rather than in response to any police questioning (TR. 16, 31).  However, the record check did not reveal a prison term in Nebraska, so the officers asked Camacho where he had spent time in prison (TR. 16, 32).  Camacho responded he spent time in prison in Missouri (TR. 16, 31-32).

After placing Camacho in the cruiser, Officer Seaton searched the truck (TR. 27).  The handle of a firearm was visible under in the center area, between the bucket seats, through the open driver's door (TR. 13, 27).  Officer Seaton may not have seen the firearm until after he began the search (TR. 27).  The officers found the firearm loaded with three rounds (TR. 13, 29).  There was a spent shell casing found on the truck's floor (TR. 13, 29-30).  The officers also found a metal marijuana grinder in the shape of a fast loading revolver (TR. 13-14, 30).  There was a metal baseball bat found in the open bed of the truck (TR. 14, 30).  The data checks and truck's search formed additional bases for Camacho's arrest (TR. 29, 39-40).

## ANALYSIS

Camacho argues the officers lacked legal justification to stop his vehicle.  Further, Camacho contends the warrantless search was not based on a valid consent or other

exception to the search warrant requirement.  The government asserts the traffic stop was justified on the reasonable suspicion Camacho had been involved in a domestic disturbance.  Finally, the government contends the search of the truck is lawfully supported by Camacho's arrest.  In the alternative, the government argues any evidence would have been inevitably discovered during an inventory search after the truck had been impounded.

Since there is no evidence the stop of Camacho's truck was based on the violation of a traffic law or a consensual encounter, the court will treat the stop as investigatory. "Stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of the [Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).  "There is no requirement that there be a traffic violation." *United States v. Jacobsen*, 391 F.3d 904, 907 (8th Cir. 2004).  "An investigative stop of a vehicle does not violate the Fourth Amendment where the police have a reasonable suspicion that the occupant of the vehicle is engaged in criminal activity." *United States v. Briley*, 319 F.3d 360, 364 (8th Cir. 2003).  "In making reasonable-suspicion determinations, reviewing courts must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Martinez-Cortes*, 566 F.3d 767, 769 (8th Cir. 2009) (internal quotation and citation omitted).  "Reasonable suspicion must be supported by 'specific and articulable facts.'" *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008) (**citing** *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

"Though each factor giving rise to suspicion might appear to be innocent when viewed alone, a combination of factors may warrant further investigation when viewed in its totality." *United States v. Morgan*, 270 F.3d 625, 631 (8th Cir. 2001); **see** *United States v. Gannon*, 531 F.3d 657, 661 (8th Cir. 2008).  The Supreme Court has held

> "[T]here could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot." Indeed, *Terry* itself involved "a series of acts, each of them perhaps innocent" if viewed separately, "but which taken together warranted further investigation." [Further] . . . "innocent behavior will frequently provide the basis for a showing of probable cause," and . . . "[i]n making a

4

> determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." That principle applies equally well to the reasonable suspicion inquiry.

*United States v. Sokolow*, 490 U.S. 1, 9-10 (1989) (internal citations omitted).

When evaluating "each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing" the court "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States Arvizu*, 534 U.S. 266, 273-74 (2002) (**citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)** (reviewing court must give 'due weight' to factual inferences drawn by local law enforcement officers)).

The officers suspected the driver of the orange truck had recently left the scene of a domestic disturbance where a man with a baseball bat had threatened a woman and shot a firearm at the house. The officers' suspicions were because 1) the vehicle matched the description of the vehicle carrying the person involved in the disturbance, 2) the truck's proximity within eight blocks of the 34th Street house, 3) the timing of the officers' observation of the truck, within 45 seconds of the dispatch call, 4) the direction the truck was traveling, 5) the lack of other traffic in the area, and 6) the time of night. Based on the totality of the circumstances, the court finds a reasonable articulable suspicion existed to justify an investigatory stop and the temporary detention of the occupant of the orange truck. See *United States v. Juvenile TK*, 134 F.3d 899, 903 (8th Cir. 1998) (finding reasonable suspicion existed based primarily on the "temporal and geographic proximity of the car to the scene of the crime, the matching description of the vehicle, and the time of the stop"). Further, the detention was directly related to the purpose of the initial stop, to ascertain whether the driver had been involved in the 34th Street disturbance. See *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984) ("The [*Terry*] stop and inquiry must be reasonably related in scope to the justification for their initiation."). The fact the officers did not observe a traffic violation does not diminish their justification for the stop. Because

the court finds the initial detention did not violate Camacho's constitutional rights, the subsequently obtained evidence should not be suppressed on that basis.

The investigatory stop immediately developed into Camacho's arrest. "To justify a warrantless arrest, probable cause must exist." *United States v. Houston*, 548 F.3d 1151, 1154 (8th Cir. 2008). "Probable cause exists when, at the time of the arrest, the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested." *United States v. Martinez*, 462 F.3d 903, 908 (8th Cir. 2006) (internal quotation and citation omitted). Probable cause to arrest exists for driving under the influence. *Houston*, 548 F.3d at 1154 (marijuana). As described by the officers, Camacho's arrest was based on his gestures toward the floor of the truck, possession of an open container of alcohol, and the officer's observations related to Camacho's intoxication. The court credits the officers' testimony about smelling alcohol on Camacho. Camacho's arrest is justified based on the officers' observations. The officers based a search of the truck on Camacho's arrest.

"Police may search a car without a warrant if they have probable cause to believe that the car contains contraband or evidence." *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999). The officers detected the odor of alcohol on the driver and suspected the vehicle may contain evidence related to the domestic disturbance. The officers' reasonable belief that evidence of crime existed in the vehicle justifies the search of the truck. **See, e.g.,** *Arizona v. Gant*, 129 S. Ct. 1710, 1719 (2009). Based on the detection of alcohol, the court finds the officers had probable cause to conduct a warrantless search of the truck. In the alternative, the officers were justified in conducting an inventory search in connection with impounding the truck. **See** *United States v. Engler*, 521 F.3d 965, 971 (8th Cir. 2008). For the reasons stated above, Camacho's motion to suppress evidence stemming from the stop and detention should be denied in its entirety. Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Robert Camacho, III's motion to suppress (Filing No. 15) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 24th day of June, 2009.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge
